UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CADET MANUFACTURING COMPANY,

Plaintiff,

v.

AMERICAN INSURANCE COMPANY, ROYAL INSURANCE COMPANY OF AMERICA f/k/a ROYAL GLOBE INSURANCE COMPANY, EMPLOYERS INSURANCE COMPANY OF WAUSAU, AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY, FIREMAN'S FUND INSURANCE COMPANY, NATIONAL SURETY CORPORATION, GRANITE STATE INSURANCE COMPANY, CENTURY INDEMNITY COMPANY, GREAT AMERICAN INSURANCE COMPANY, AND AGRICULTURAL EXCESS AND SURPLUS INSURANCE COMPANY,

Defendants.

Case No. C04-5411FDB

AMENDED ORDER APPROVING SETTLEMENT AND BARRING CLAIMS AGAINST SETTLING INSURERS

This matter is before the court on the motion of Defendant Century Indemnity Insurance Company ("Century") for a claims bar order.  Century is joined by Defendant Great American Insurance Company ("Great American") and Plaintiff Cadet Manufacturing Company (Cadet). Cadet has reached a settlement with The Port of Vancouver (the "Port") and two of its excess

ORDER - 1

insurers, Century and Great American, that will effectively resolve all issues between them in this case. The settlement is contingent upon approval of the settlement by the Bankruptcy Court and entry of a bar order by this court, which will preclude Granite, as the non-settling defendant insurer, from later seeking contribution or indemnity from Century and Great American. In a lengthy and well-reasoned opinion, Judge Snyder of the Bankruptcy Court approved the settlement on March 16, 2006.

Granite opposes entry of a bar order, arguing that the settlement is unfair. Granite's primary bases of unfairness are that (1) the settlement denies Granite the right to litigate the amount of the underlying claims; (2) Granite is precluded from seeking rightful contribution; (3) Granite is potentially liable for a disproportionate share; and (4) the Port should be responsible for any gap between the amount Cadet agreed to settle with Century and Great American and the amount that they should have paid. Granite has filed a notice of appeal of the Bankruptcy Court's Order.

I.

At the outset, the court notes that it has the inherent equitable power to enter an order precluding subsequent claims for contribution and indemnity by non-settling parties in the litigation with notice of the proposed order, so long as their rights are protected by it. Fed.R.Civ.P. 16(a) and ( c). [1] The entry of a bar order to facilitate a partial settlement is wholly within the realm of the court's authority to encourage settlement. Zidell Marine Corp. v. Beneficial Fire and Cas. Ins. Co., No. 03-5131RBL at 2 (W.D.Wash. May 24, 2004). Although the court may view the settlement terms with an eye toward the evaluative factors in Glover v. Tacoma Gen. Hosp., 98 Wn.2d 708, 717, 658 P.2d 1230 (1983), rev'd on other grounds, Crown Controls, Inc. v. Smiley, 110 Wn.2d 695, 756 P.2d 717 (1988), it is not required to consider all the factors or to weigh the factors evenly.

---

[1] The moving parties have withdrawn their request for oral argument on the instant motion. A formal reasonableness hearing is not required in any event, in order to approve a claims bar order. *See,* Zidell, No. 03-5131RBL at 4.

ORDER - 2

Id. at 4. The court need also not evaluate the settling defendants "fault" relative to that of the non-settling defendants. Id.

## II.

The proposed settlement provides that Cadet will stipulate to allow a claim in favor of the Port for $20 million. (Evidence submitted to the Bankruptcy Court supports a claim for approximately $32 million – $13.5 million in incurred costs and $18.5 million in future costs). Century and Great American will pay a total of $10 million to the Port on behalf of its insured, Cadet. The net judgment against Cadet will be $14 million ($20 million less $10 million payment plus $4 million estimated cost of completing Cadet Site clean-up.) The Port agrees to look solely to Cadet's environmental insurance policies for further relief and Cadet will assign to the Port certain policy rights it has under its policies with Century and Great American. The Port agrees to take over responsibility for the Cadet Site cleanup and to indemnify and hold Cadet harmless from and against any future claims associated with pollution or clean-up, including any potential claims by the DOE. Cadet will also assign to the Port all of its policy rights against Granite for environmental claims. Cadet agrees to sell the Cadet Site to the Port for a fair market value price less a 7 1/2% "stigma discount," and will lease it back from the Port. The Port waives any rights it may have under the "clawback" provision contained in section 4.14.1 of Cadet's Bankruptcy Plan. Great American and Century agree to pay Cadet $824,955 for past defense and indemnity costs and fifty percent of up to $750,000 in defense and indemnity costs incurred between November 18, 2005 and the date the Settlement Agreement is approved by the Bankruptcy Court. Additional defense and indemnity costs, estimated in excess of $1.4 million, will be paid to Cadet from the funds the Port recovers from Granite.

## III.

The parties agree that the question before this court is not whether the underlying settlement is substantively reasonable vis-a-vie the settling parties. The question of substantive reasonableness

ORDER - 3

was litigated at length before the Bankruptcy Court, and included a special set hearing, filing of overlength briefs, and oral argument. In addition to hearing oral argument, the Bankruptcy Court considered extensive briefing, including four voluminous expert declarations and opposing briefing and expert testimony by Granite. Judge Snyder applied both the federal bankruptcy standard in <u>In re A&C Props</u>., 784 F.2d 1377, 1381 (9th Cir. 1986) and the Washington state-law standard set forth in <u>Glover v. Tacoma Gen. Hosp.</u>, 98 Wn.2d 708. Judge Snyder concluded that the settlement was reasonable under both standards. In summary, the Bankruptcy Court found that the Port's claim against Cadet is approximately $32 million, but that experts agree that an additional $4 million will be necessary to clean-up the Cadet site, meaning that Cadet's reasonable exposure is approximately $36 million, exclusive of defense costs that Cadet would incur but for the settlement; that there was ample evidence in the record to permit an evaluation of the reasonableness of the settlement and the Port's future costs; the settling insurers agreed to waive valuable coverage defenses; the allocation was fair and reasonable because the settling insurers agreed to pay approximately 42 percent of the total liability and Granite retains all of its coverage defenses and may be ultimately responsible for far less than the $14 million stipulated judgment; and that the settlement was not the product of bad faith, collusion or fraud.

The question remaining for this court to decide is whether, under the circumstances, the proposed settlement is reasonable vis-a-vie a claims bar order and the interests of the non-settling defendant, Granite.

IV.

Under the proposed claims bar order, Granite maintains the right to litigate its coverage defenses, a right the settling insurers have relinquished. This means that if Granite is successful, it could end up paying nothing at the end of this litigation. If Granite is unsuccessful, it may seek a determination relating to the percentage of its liability, any resulting shortfall between the amounts recovered and the amount settled upon between the Port and Cadet notwithstanding. Granite is also

ORDER - 4

free to argue that Century and Great American underpaid and that the Port should absorb the difference. Granite is entitled to an offset for the monies paid by Century and Great American.

With the $10 million settlement payment added to amounts already paid, Century and Great American have paid $11.2 million. Granite could be found responsible for $14 million. The percentage of responsibility under the settlement, therefore, is 42% for Century and Great American, and 58% for Granite. As an initial matter, the court notes that there is no basis for finding that the only reasonable outcome of this settlement is the same allocation that might have been appropriate after a trial on the merits. Settlement is, after all, a compromise of claims. While Granite retains its rights to contest coverage, the settling insurers forfeit those rights for the sake of settlement. Granite also faces potential extra-contractual liability (bad faith and consumer protection claims) that the settling insurers do not.

Century agues that in this case, where there are multiple policies in the same layer of coverage for a continuing loss, the maximum-loss rule described in <u>Mission Ins. Co. v. Allendale Mutual Ins. Co.</u>, 95 W.2d 464, 626 P.2d 505 (1981), should be applied to apportion the insurers' liability. Thus, an allocation based loosely on the number of policy periods issued by Granite (four policy periods), Century (three policy periods) and Great American (one policy period), results in at least 50% liability for Granite, as it issued four of the eight policies on the risk. The court agrees that the settlement agreement's 58% allocation is fair when viewed against such a formula. This is particularly so, when the allocation is considered in light of the litigation rights Granite retains and its potential extra-contractual exposure.

V.

Taking all of these factors into consideration, the court finds that the settlement is reasonable and that Granite, as the non-settling defendant, is adequately protected under the claims bar order. The court favors settlement of complex litigation and agrees that a claim bar is appropriate in this case in order to assure the protection of the settling parties from equitable claims for indemnity or

ORDER - 5

1  contribution.

2  ACCORDINGLY,

3  IT IS ORDERED:

4  (1) Defendant Century Indemnity Company's motion for order approving settlement and
5  barring claims against settling insurers (Dkt.#206) is **GRANTED.**

7  Dated this __6th__ day of April, 2006.

9  FRANKLIN D. BURGESS
UNITED STATES DISTRICT JUDGE

26  ORDER - 6