UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CADET MANUFACTURING COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN INSURANCE COMPANY, ROYAL INSURANCE COMPANY OF AMERICA f/k/a ROYAL GLOBE INSURANCE COMPANY, EMPLOYERS INSURANCE COMPANY OF WAUSAU, AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY, FIREMAN'S FUND INSURANCE COMPANY, NATIONAL SURETY CORPORATION, GRANITE STATE INSURANCE COMPANY, CENTURY INDEMNITY COMPANY, GREAT AMERICAN INSURANCE COMPANY AND AGRICULTURAL EXCESS AND SURPLUS INSURANCE COMPANY,<br><br>Defendants. | Case No. C04-5411 FDB<br><br>ORDER DENYING GRANITE STATE INSURANCE COMPANY'S MOTION TO BIFURCATE |

This matter comes before the Court on Defendant Granite State Insurance Company's (hereafter, Granite State) Motion to Bifurcate Plaintiff's Bad Faith Claims and Plaintiff's Coverage

ORDER - 1

Claims. After reviewing all materials submitted by the parties and relied upon for authority, the Court is fully informed and hereby denies the motion to bifurcate for the reasons stated below.

## INTRODUCTION AND BACKGROUND

This matter arises from Cadet Manufacturing Company's (hereafter, Cadet) liability for damages due to property damage sustained as a result of environmental contamination. In January 1999, Cadet filed a voluntary petition under Chapter 11 in Bankruptcy Court. In January 2000, the Bankruptcy Court confirmed Cadet's plan of reorganization which provided that the holders of environmental claims must look to Cadet's insurance coverage for satisfaction of their claims. Cadet was permitted to settle the environmental claims with any of its insurers, pending approval of the settlement by the Bankruptcy Court.

Cadet tendered the defense to its claims to its insurers that provided commercial general liability policies and excess policies. Cadet subsequently filed suit against its primary and excess carriers, including Granite State, for defense and indemnity costs. Cadet and the primary carriers entered into a settlement agreement. The Court approved the settlement and entered a order barring contribution claims against the settling insurers. Cadet and its remaining excess insurers entered into settlement negotiations. Cadet and two of the excess carriers were able to negotiate a settlement. This settlement was approved by the Court and an order entered barring contribution claims against the settling insurers. Granite State did not participate in the settlement and remains the sole insurer subject to suit

Cadet obtained Court approval to file an amended complaint to include insurance bad faith and Washington Consumer Protection Act claims against Granite State. The amended complaint alleges that since the filing of the original complaint, Granite State has engaged in a pattern of bad faith conduct intended to avoid its coverage obligations under its insurance policy. These claims include allegations that Granite State breached its duty to investigate the underlying claims against Cadet and Cadet's coverage claim, failed to take reasonable steps to settle the underlying claims,

ORDER - 2

failed to pay defense costs and refused to make reasonable attempts to settle the underlying claims.

Granite State now moves the Court to bifurcate the coverage claims from Cadet's bad faith claims and to delay discovery on the bad faith claims until completion of the trial on coverage.

**MOTION TO BIFURCATE**

Rule 42(b) of the Federal Rules of Civil Procedure authorizes the court to order a separate trial of any claim when separation is in the interest of judicial economy, will further the parties' convenience, or will prevent undue prejudice. Fed. R. Civ. P. 42(b). Rule 42(b) states:

> **(b) Separate Trial.** The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim ... or of any separate issue or of any number of claims ..., always preserving inviolate the right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States.

The decision to bifurcate is committed to the sound discretion of the trial court. See, Hangarter v. Provident Life and Acc. Ins. Co., 373 F.3d 998,1021 (9th Cir. 2004); Hirst v. Gertzen, 676 F.2d 1252, 1261 (9th Cir.1982). The Ninth Circuit considers bifurcation to be outside of normal trial procedures. Hangarter, at 1021. "[S]ince the evidence usually overlaps substantially, the normal procedure is to try compensatory [coverage] and punitive [bad faith] damage claims together with appropriate instructions to make clear to the jury the difference in the clear and convincing evidence required for the award of punitive damages." Id., at 1021 (quoting, McLaughlin v. State Farm Mut. Auto. Ins. Co., 30 F.3d 861, 871 (7th Cir.1994)).

Granite State, relying primarily on two decisions of the District Court of Nevada, contends that bifurcation is appropriate to prevent undue prejudice to the insurer. In Drennan v. Maryland Cas. Co., 366 F. Supp.2d 1002 (D. Nev., 2005) the court held bifurcation particularly appropriate when resolution of a single claim could be dispositive of the entire case. Under Nevada law a claim for bad faith requires the wrongful denial of coverage. If the plaintiff fails to prevail on the coverage claim, there is no basis for a finding of bad faith. " Bifurcation thus would further the interest of expedient resolution of litigation. Further, bifurcation would simplify the issues for trial and reduce the

ORDER - 3

possibility of undue prejudice by allowing the jury to hear evidence of bad faith only upon establishing that [the insurer] breached the insurance contract". Id., at 1007-08.

The same reasoning is found in Cook v. United Service Auto. Ass'n., 169 F. R. D. 359, 361-62 (D. Nev., 1996), wherein the court reasoned that bifurcation of the coverage claim from the bad faith claim appropriate where there could be no basis for a bad faith claim if plaintiff did not prevail on the coverage claim.  The court found that under these circumstances bifurcation furthers the interest in expedient resolution of litigation. Bifurcation will also simplify the issues for trial. "In a bifurcated trial, the jury may hear the underlying ... coverage claim without the issues being obscured by the concurrent presentation of evidence relating to the bad faith claims. Therefore, the court's interest in judicial economy warrants the bifurcation of the potentially dispositive contract claim from the extra-contractual claims". Id., at 362.  See also, O'Malley v. United States Fidelity and Guaranty Co., 776 F.2d 494, 501 (5th Cir.1985) (holding that, since recovery on plaintiff's bad faith claim would not have been possible unless plaintiff prevailed on his coverage claim, the district court "acted correctly in bifurcating the issues").

Washington law differs from that of Nevada, upon which the analysis of Drennan and Cook depend.  In Washington, an insured may maintain suit against an insurer for bad faith investigation of a claim regardless of whether the insurer correctly determined that there was no coverage.  See, Coventry Associates v. American States Ins. Co., 136 Wn.2d 269, 279, 961 P.2d 933 (1998). Thus, unlike Drennan and Cook, a resolution of the coverage claim adverse to Cadet will not dispose of the necessity of a trial on bad faith claims.  Thus, bifurcation would not foster judicial economy.

Granite State contends that if the jury considers both the coverage under the policy and Granite State's claims handling procedures, Granite State will inevitably be prejudiced.

As previously noted, within the Ninth Circuit, declining to bifurcate comports with normal trial procedure. Where an overlap of factual issues exists between the claims, courts are reluctant to bifurcate the proceedings.  McLaughlin v. State Farm Mut. Auto. Ins. Co., 30 F.3d 861, 871 (7th

ORDER - 4

Cir.1994). The courts have recognized substantial overlap between the issues of coverage and bad faith, such that bifurcation of the issues would be inappropriate. See, <u>Tharpe v. Illinois Nat. Ins. Co.</u>, 199 F. R. D. 213 (W.D. Ky., 2001); <u>Bloxham v. Mountain West Farm Bureau Mut. Ins. Co.</u>, 43 F. Supp.2d 1121 (D. Mont.,1999); <u>Light v. Allstate Ins. Co.</u>, 182 F. R. D. 210 (S.D. W.Va.,1998).

The Court is unpersuaded that a potential for prejudice warrants bifurcation of the claims. The evidence presented concerning the breach of contract claim is very likely to overlap with evidence introduced on the bad faith claim. For example, the bad faith claim involves a determination of whether Granite State had a reasonable basis for denying coverage. The evidence used to support that issue would be relevant to determine whether Granite State owed coverage. Thus, bifurcation would likely lead to duplicative argument on several issues.

In the exercise of its discretion, this Court finds that bifurcation would be undesirable in the instant case. Consideration of the advantages and disadvantages of bifurcating this matter and taking into consideration convenience, judicial economy and prejudice leads the Court to the conclusion that bifurcation is inappropriate.

**CONCLUSION**

For the reasons set forth above, Defendant Granite State's motion to bifurcate should be denied.

ACCORDINGLY,

IT IS ORDERED:

Granite State Insurance Company's Motion to Bifurcate Plaintiff's Bad Faith Claims and Plaintiff's Coverage Claims [Dkt. # 260] is DENIED.

DATED this 1st day of June, 2006.

FRANKLIN D. BURGESS
UNITED STATES DISTRICT JUDGE

ORDER - 5